IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Two Apple iPhones and one Motorola cell phone, seized on January 8, 2024 | Case No. 5:24-mj-00005 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

Your affiant, ATF Task Force Officer Jason Redden, being duly sworn, deposes and states as follows:

1. This affidavit is made in support of a search warrant for three (3) cell phones, (two Iphones and one Motorola, further described in Attachment A. The information in this affidavit comes from my investigation of Leon Smith that distributes narcotics in and around Beckley, Raleigh County, West Virginia and within the Southern District of West Virginia. Special Agents from the Bureau of Alcohol, Tobacco and Firearms (hereinafter ATF) along with officers from the Beckley/Raleigh County Drug and Violent Crime Unit (hereinafter BRCDVCU) conducted an investigation of SMITH. As set forth in this affidavit, I believe probable cause exists that SMITH has distributed controlled substances in violation of 21 U.S.C. § 841(a) (1), used the three (3) previously mentioned cellular telephones to facilitate the distribution of controlled substances in violation of 21 U.S.C. § 843(b), and conspired to distribute controlled substances in violation of 21 U.S.C. § 846. Further, probable cause exists that evidence of those offenses is currently located within the electronic data stored on these cellular telephones as more particularly described in Attachment B.

## RELEVANT TRAINING AND EXPERIENCE

2. I am a certified law enforcement officer in the State of West Virginia. I am employed as a Deputy Sheriff with the Raleigh County Sheriff's Office and have been so employed since July of 2016. I am currently assigned to the Beckley/Raleigh County Drug and Violent Crime Unit. I am also assigned as a full-time task force officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

3. During my employment with the Raleigh County Sheriff's Office, I have participated in many different types of criminal investigations, including but not limited to drug trafficking and distribution investigations, firearm offenses, kidnapping, robbery, homicide, sexual assault, other violent crimes, financial fraud, property crimes, child exploitation crimes, missing person cases, terroristic threat investigations, as well as matters relating to disposition and tracking of stolen property. I have also received specialized training relating to firearms offenses and drug investigations involving the trafficking of narcotics and drug trafficking organizations. In my capacity as a Deputy, I have received training and gained experience by conducting and participating in drug investigations regularly. I have a working knowledge and experience in relation to the methods, terminology, and business practices used by traffickers of illegal controlled substances. On numerous occasions, I have used cooperating individuals and confidential informants in the course of investigating the distribution of illegal controlled substances.

4. Your affiant is familiar with United States Code; 21 U.S.C. § 841(a)(1) – possession with intent to distribute a controlled substance. It shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

5. Your affiant is familiar with United States Code; 21 U.S.C. § 846 – attempt and

conspiracy. Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## STATEMENT OF PROBABLE CAUSE

6. In November of 2023, I began an investigation into Leon Eugene SMITH Jr, after speaking with a confidential informant (hereinafter CI) that has provided information that has been substantiated and corroborated. The CI advised they could purchase fentanyl a schedule II controlled substance from SMITH, the CI stated that they had previously purchased fentanyl from SMITH and that he has offered to sell to them whenever they needed it. I was familiar with SMITH due to previous narcotics investigations involving him. I was also aware that SMITH was on supervised release in the Southern District of West Virginia.

7. On December 15, 2023 members of the BRCDVCU utilized the CI to make a controlled purchase of fentanyl from SMITH in the area of New Guinea Avenue in Beckley. The CI informed officers that they had set up the drug transaction through phone communications. After the drug transaction SMITH was observed returning to 124 Samoa Drive, Beckley, Raleigh County, West Virginia 25801.

8. On December 19, 2023 the BRCDVCU utilized the CI to make another controlled purchase of fentanyl from SMITH in the area of New Guinea Avenue, Beckley WV. The CI advised that they had set up the controlled purchase through phone communications. After the drug transaction SMITH was observed returning to 124 Samoa Drive, Beckley, Raleigh County, West Virginia 25801.

9. On December 26, 2023, the BRCDVCU utilized the CI to make another controlled purchase of fentanyl from SMITH in the area of New Guinea Avenue, Beckley WV. Before the

controlled drug buy I observed on the CI's phone that they had spoken to SMITH on phone number 304-894-7015. The CI had this number listed in his phone under the name "Leon." SMITH is observed before the drug transactions leaving 124 Samoa Drive, Beckley, Raleigh County, West Virginia 25801, and afterwards returning to the same address after driving around for a period time, stopping nowhere. Based on my training and experience I believe that he was engaging in countersurveillance measures before returning to 124 Samoa Drive, Beckley, Raleigh County, West Virginia 25801.

10. On December 31, 2023, I learned through speaking with law enforcement in Fayette County WV that SMITH had been arrested for various crimes to include possession of a controlled substance with the intent to deliver. Officers from Fayette County advised that SMITH was in possession of two cellular telephones during the arrest but advised that law enforcement did not seize the cellular telephones. a

11. On January 3, 2024 I spoke with the CI who advised they had spoken with SMITH through the previously listed phone number and that SMITH was out of jail and willing to continue to sell the CI fentanyl. Based on this members of the BRCDVCU utilized the CI to make a controlled purchase of fentanyl from SMITH in the area of New Guinea Avenue, Beckley WV. The CI advised that they had set the transaction up through speaking with SMITH through his cellular telephone with the previously listed phone number. After all four of the controlled drug buys I conducted a field test on the purchased narcotics and every time the substance showed a positive result for the presence of fentanyl a schedule II controlled substance.

12. On January 3, 2024, the CI texted SMITH about future drug transactions. On January 4, 2024, the CI again texted SMITH about needing further narcotics and if SMITH would be around and could provide the narcotics and SMITH responded via text message that it would

be "soon." From speaking with the CI and also from my training and experience I would know this conversation to mean that SMITH would continue to be available to sell narcotics to the CI and therefore have more narcotics at his disposal.

13. On January 8, 2024 Agents with the ATF and members of the BRCDVCU conducted a search warrant at 124 Samoa Drive, Beckley at SMITH's residence. During execution of the search warrant officers and agents located illegal controlled substances such as fentanyl and other evidence of large scale drug distribution. SMITH was arrested on a federal arrest warrant as well. When SMITH was taken into custody he had two cell phones in his possession a Motorola cellular phone and a black Iphone. Inside the residence officers and agents also located a 3rd cellular telephone, a white Iphone in the living room of the residence. From my training and experience individuals who do not have steady employment and sell illegal narcotics often carry multiple telephones to use for arranging to sell narcotics. In many instances individuals will have one phone to conduct the delivery of drugs, another phone would be used to speak with suppliers and or use as a personal phone. It is evident that SMITH was using one of these cellular telephones to arrange drug transactions with the CI.

14. I know from my training and experience that drug traffickers use cellular telephones to facilitate their illegal activities. Consequently, information stored in a drug trafficker's cellular telephone will constitute evidence of those activities. For example, the digital memory of cellular telephones will contain records of placed and received calls and text messages, contact lists of customers, suppliers, and other confederates, notes of drug debts paid and owed, location information relevant to places where drugs and drug proceeds are stored, photographs of drugs, drug proceeds, origin and intended recipients of the possessed drugs, and individuals involved in the drug trafficking activities along with other relevant information. Unless intentionally deleted,

cellular telephones retain that information indefinitely. The SUBECT TELEPHONES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT TELEPHONES first came into the possession of the ATF.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular telephone: A cellular telephone (or mobile or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communications with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log" which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

16. The SUBJECT TELEPHONE is a cellular telephone. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that established how the SUBJECT TELEPHONE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT TELEPHONE because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the SUBJECT TELEPHONES. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> b. A person who has appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use who used them, and when.

*c.* The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether electronically stored information is evidence may depend on other information stored on the device and the application of knowledge about how electronically stored data works. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

*d.* Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when sometimes it is necessary to establish that particular thing is not present on a storage medium.

19. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT TELEPHONE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. Because this warrant seeks only permission to examine a device already in law enforcement possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. Based on the facts set forth above, your affiant believes probable cause exists that Leon SMITH has committed federal offenses, including but not limited to 21 U.S.C. §§ 841(a)(1) and 846. Your affiant believes that probable cause exists for a search warrant to search the described three (3) cellular telephones described in Attachment A.

22. Accordingly, your affiant respectfully requests that the Court issue: an Order granting authority to search the three (3) cellular telephones that was in the possession of Leon SMITH.

Further your affiant sayeth naught.

Respectfully submitted,

_____
Jason Redden, ATF Task Force Officer

SUBSCRIBED AND SWORN before me by telephonic means this 24th day of January 2024.

_____
HONORABLE OMAR J. ABOULHOSN
UNITED STATES MAGISTRATE JUDGE